


UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2023 Grand Jury

UNITED STATES OF AMERICA,

Plaintiff,

v.

LU ZHANG,
aka "Nikki,"
JOSEPH WONG,
JUSTIN WALKER, and
HAILONG ZHU,

Defendants.

CR No. 2:23-cr-00596 -RGK

I N D I C T M E N T

[18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 18 U.S.C. § 1956(a)(1)(B)(i): Concealment Money Laundering; 18 U.S.C. § 1956(a)(2)(B)(i): International Money Laundering; 18 U.S.C. § 982: Criminal Forfeiture]

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A. Defendants

1. Defendant JOSEPH WONG ("WONG") was a citizen of the United States and resided in Los Angeles, California.

2. Defendant LU ZHANG, also known as "Nikki" ("ZHANG"), was a citizen of China and resided in multiple locations in the United States, including in Los Angeles, California; New York, New York; and Miami, Florida.

3. Defendant JUSTIN WALKER ("WALKER") was a citizen of the United States and resided in Los Angeles, California.

4. Defendant HAILONG ZHU ("ZHU") was a citizen of China and resided in multiple locations in the United States, including in Illinois and Los Angeles, California.

B. Sea Dragon Shell Companies

5. Sea Dragon Trading, LLC ("Sea Dragon Trading") was a shell company registered with the California Secretary of State on or about September 8, 2022. Defendant ZHU was the sole registered agent and the Chief Executive Officer.

6. Sea Dragon Remodel, Inc. ("Sea Dragon Remodel," and, together with Sea Dragon Trading, the "Sea Dragon shell entities") was a shell company registered with the California Secretary of State on or about October 17, 2022. Defendant ZHU was the sole registered agent and the Chief Executive Officer.

C. Definitions

7. "Digital currency" or "virtual currency" is currency that exists only in digital form; it has some of the characteristics of traditional money, but it does not have a physical equivalent. Cryptocurrency, a type of virtual currency, is a network-based medium of value or exchange that may be used as a substitute for traditional currency to buy goods or services, or exchanged for traditional currency or other cryptocurrencies.

8. The term "spoofed" refers to domain spoofing, a process by which cybercriminals seek to persuade victims that a web address or email belongs to a legitimate and generally trusted company, when in fact it links the user to a fraudulent site controlled by a cybercriminal.

9. In "pig butchering" fraud schemes (a term derived from a foreign-language phrase used to describe these crimes), scammers encounter victims on dating services, social media, or through unsolicited messages or calls, often masquerading as a wrong number. Scammers initiate relationships with victims and slowly gain their trust, eventually introducing the idea of making a business investment using cryptocurrency. Victims are then directed to other members of the scheme operating fraudulent cryptocurrency investment platforms and applications, where victims are persuaded to make financial investments. Once funds are sent to scammer-controlled accounts, the investment platform often falsely shows significant gains on the purported investment, and the victims are thus induced to make additional investments. Ultimately, the victims are unable to withdraw or recover their money, often resulting in significant losses for the victims.

10. In "customer service" or "tech support" fraud schemes, victims are contacted by fake customer service or technology support representatives. Scammers often pretend to represent a prominent company and contact the victim to alert them to a supposed infection with a computer virus or false issue with the victim's computer or other digital device. Scammers then take a variety of actions to defraud the victim, including, but not limited to the following: (a) causing the victim to provide them with remote access to the victim's digital devices in order to supposedly remediate the problem, (b) requesting that funds be transferred to pay for assistance, and (c) advising the victim to transfer money from accounts that the scammer claims are compromised to accounts controlled by the scammer.

COUNT ONE

[18 U.S.C. § 1956(h)]

[ALL DEFENDANTS]

11. The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 10 of this Indictment here.

A. OBJECTS OF THE CONSPIRACY

12. Beginning on an unknown date, but no later than in or about September 2022, and continuing to on or about March 21, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants WONG, ZHANG, WALKER, and ZHU, together with others known and unknown to the Grand Jury, knowingly conspired and agreed:

a. to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, which, in fact, involved the proceeds of a specified unlawful activity, that is, wire fraud, committed in violation of Title 18, United States Code, Section 1343, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to and through a place outside of the United States, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which

monetary instruments and funds were, in fact, the proceeds of a specified unlawful activity, that is, wire fraud, committed in violation of Title 18, United States Code, Section 1343, and knowing that the transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

B. THE MANNER AND MEANS OF THE CONSPIRACY

13. The objects of the conspiracy were to be accomplished in substance as follows:

Solicitation of Investment Fraud Victims

a. Unindicted co-conspirators contacted victims directly through unsolicited social-media interactions, telephone calls and messages, and online dating services.

b. Unindicted co-conspirators gained the trust of victims by establishing either professional or romantic relationships with the victims. Unindicted co-conspirators built these relationships through interstate communications including, but not limited to, electronic messages sent via end-to-end encrypted applications.

c. Unindicted co-conspirators promoted fraudulent cryptocurrency investments to the victims after gaining the victims' trust.

d. Unindicted co-conspirators established spoofed domains and websites that resembled legitimate cryptocurrency trading platforms.

e. In some executions of the scheme, unindicted co-conspirators fraudulently induced victims into investing in

cryptocurrency through these fraudulent and spoofed investment platforms.

f. In other executions of the scheme, unindicted co-conspirators fraudulently induced victims into investing in cryptocurrency by sending funds via wire transfer.

g. Unindicted co-conspirators fraudulently represented to victims that the victims' investments were appreciating when, in fact, those funds had been converted by members of the fraud scheme.

Solicitation of Customer Service and Tech Support Fraud Victims

h. Unindicted co-conspirators fraudulently represented to victims through interstate communications including, but not limited to, electronic messages and phone calls, that they were from a customer service or technology support company.

i. Unindicted co-conspirators fraudulently induced victims to send funds via wire transfer or cryptocurrency trading platforms to purportedly remediate a non-existent virus or other false computer-related problem.

Receipt and Disposition of Fraud Proceeds

j. Defendants WONG, ZHANG, WALKER, and ZHU received victim funds in bank accounts established on behalf of shell companies and caused the further transfer of victim funds to domestic and international bank accounts.

k. Defendant ZHU and other co-conspirators registered shell companies with the California Secretary of State, including Sea Dragon Trading and Sea Dragon Remodel.

l. Defendant ZHU and other co-conspirators opened bank accounts in the names of various shell companies, including Sea Dragon Trading and Sea Dragon Remodel, with United States financial

institutions, including Bank of America ("BoA") and JPMorgan Chase ("JPMC").

m. Defendants WONG, WALKER, ZHANG, and ZHU, and other co-conspirators, discussed when and how to receive and execute interstate and international wire transfers of victim funds.

n. Defendants WONG, WALKER, ZHANG, and ZHU, and other co-conspirators, arranged for the transfer of the fraudulently obtained proceeds via interstate and international wire transfers.

o. Defendants WONG, WALKER, ZHANG, and ZHU, and other co-conspirators, caused wire transfers to be labeled as domestic when, in truth and in fact, the wires were destined for foreign beneficiaries.

p. Defendants WONG, WALKER, ZHANG, and ZHU, and other co-conspirators, caused wire transfers to be sent through various intermediary bank accounts before reaching their final beneficiary.

q. Defendant WONG kept financial documents associated with the bank accounts that ZHU and other co-conspirators had opened. Defendant WONG also obtained online access to these bank accounts. Defendant WONG used this online access to review the bank accounts, execute wire transfers, and communicate with United States financial institutions when the accounts were restricted by the financial institutions.

r. Defendants WONG and ZHANG made phone calls to United States financial institutions and falsely represented that they were the accountholders when, in fact, ZHU or another co-conspirator was the accountholder. During these calls, defendants WONG and ZHANG tried to unfreeze accounts that banks had restricted due to fraud concerns.

s. Defendants WONG, WALKER, ZHANG, and ZHU, and other co-conspirators, communicated with each other and coordinated acts in furtherance of the conspiracy through an encrypted messaging service.

t. Defendants WONG, WALKER, ZHANG, and ZHU, and other co-conspirators, traveled to financial institutions within the Central District of California to access funds in the bank accounts used to launder fraud proceeds.

u. The overall fraud scheme involved at least 284 transactions and resulted in more than $80 million in victim losses. More than $20 million in victim funds were directly deposited into bank accounts associated with defendants WONG, ZHANG, WALKER, and ZHU, and more than $2.2 million in victim funds were directly deposited into bank accounts associated with the Sea Dragon shell entities.

C. OVERT ACTS

14. In furtherance of the conspiracy and to accomplish its objects, defendants WONG, ZHANG, WALKER, and ZHU, and others known and unknown to the Grand Jury, on or about the dates set forth below, committed and caused to be committed various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1: On September 9, 2022, defendant ZHU opened a bank account ending in 3886 with JPMC (the "3886 JPMC Account") in the name of Sea Dragon Trading, LLC, in Norwalk, California.

Overt Act No. 2: On September 9, 2022, defendant ZHU opened a bank account ending in 3881 with BoA (the "3881 BoA Account") in the name of Sea Dragon Trading, LLC, in Norwalk, California.

Overt Act No. 3: On October 12, 2022, defendants WONG, ZHANG, WALKER, and ZHU received a wire transfer of $31,000 from Victim M.C. to the 3886 JPMC Account.

Overt Act No. 4: On October 17, 2022, defendant ZHU executed a wire transfer of $40,000 from the 3886 JPMC Account to a bank account at Mitsubishi UFJ Trust and Banking (the "MUFJ Account") with wire instructions directing that the money ultimately be transmitted to an overseas bank account with Deltec Bank, a Bahamian bank ("Deltec Bank").

Overt Act No. 5: On October 20, 2022, defendants ZHU and WONG visited a JPMC branch in Los Angeles, California and executed a wire transfer of $225,000 from the 3886 JPMC Account to the MUFJ Account with wire instructions directing that the money ultimately be transmitted to a bank account with Deltec Bank.

Overt Act No. 6: On October 20, 2022, defendant ZHU opened a bank account ending in 9529 with BoA (the "9529 BoA Account") in the name of Sea Dragon Remodel, Inc., in Huntington Park, California.

Overt Act No. 7: On October 21, 2022, defendant ZHU opened a bank account ending in 5581 with JPMC (the "5581 JPMC Account") in the name of Sea Dragon Remodel, Inc., in El Monte, California.

Overt Act No. 8: On October 25, 2022, defendants WONG, ZHANG, WALKER, and ZHU received a wire transfer of $32,000 from Victim B.G. to the 9529 BoA Account.

Overt Act No. 9: On October 25, 2022, defendant ZHU visited a JPMC branch in El Monte, California and executed a wire transfer of $152,000 from the 3886 JPMC Account to a bank account with a financial institution in Hong Kong.

Overt Act No. 10: On October 27, 2022, defendant ZHU opened a bank account ending in 4241 with EastWest Bank ("EWB") (the "4241 EWB Account") in the name of Sea Dragon Trading, LLC, in Arcadia, California.

Overt Act No. 11: On October 28, 2022, defendant ZHU opened a bank account with EWB ending in 4340 (the "4340 EWB Account") in the name of Sea Dragon Remodel, Inc., in Arcadia, California.

Overt Act No. 12: On October 28, 2022, defendants ZHU and ZHANG visited a BoA branch in Monterey Park, California, and deposited $2,800 into defendant ZHU's personal BoA account ending in 6689.

Overt Act No. 13: On October 31, 2022, defendants ZHU, WONG, and WALKER visited a BoA ATM in Alhambra, California, and deposited $2,000 into ZHU's personal BoA account ending in 6689.

Overt Act No. 14: On October 31, 2022, defendant ZHU executed a wire transfer of $108,000 from the 9529 BoA Account to a bank account with a financial institution in Hong Kong.

Overt Act No. 15: On November 1, 2022, defendant ZHU opened a bank account ending in 6778 with Wells Fargo Bank ("WF") (the "6778 WF Account") in the name of Sea Dragon Remodel, Inc., in Rosemead, California.

Overt Act No. 16: On November 2, 2022, defendants WONG, ZHANG, WALKER, and ZHU received a wire transfer of $20,000 from Victim C.G. to the 5581 JPMC Account.

Overt Act No. 17: On November 3, 2022, defendants ZHU and WONG executed a wire transfer of $50,000 from the 5581 JPMC Account to the MUFJ Account with wire instructions directing that the money ultimately be transmitted to a bank account with Deltec Bank.

Overt Act No. 18: On November 4, 2022, defendants ZHU and WONG executed another wire transfer of $50,000 from the 5581 JPMC Account to the MUFJ Account with wire instructions directing that the money ultimately be transmitted to a bank account with Deltec Bank.

Overt Act No. 19: On November 21, 2022, defendant WONG executed a wire transfer of $49,000 from the 9529 BoA Account to the MUFJ Account with wire instructions directing that the money ultimately be transmitted to a bank account with Deltec Bank.

Overt Act No. 20: On November 25, 2022, defendant WALKER sent messages on a chat application to defendants WONG and ZHANG providing online banking account credentials.

Overt Act No. 21: On November 25, 2022, defendants WONG, ZHANG, WALKER, and ZHU received a wire transfer of $5,000 from Victim K.F. to the 9529 BoA Account.

Overt Act No. 22: On November 25, 2022, defendant ZHU and WONG withdrew $20,000 in cash from the 9529 BoA Account.

Overt Act No. 23: On November 25, 2022, defendants ZHU and WONG visited a U.S. Bank branch in Las Vegas, Nevada, and withdrew $100,010 from ZHU’s personal bank account.

Overt Act No. 24: On November 29, 2022, defendant WONG executed a wire transfer of $53,000 from the 9529 BoA Account to the MUFJ Account with wire instructions directing that the money ultimately be transmitted to a bank account with Deltec Bank.

Overt Act No. 25: On November 30, 2022, defendant WONG contacted JPMC to inquire about the status of the 3886 JPMC Account and in doing so, claimed to be ZHU, provided ZHU’s personal information, and requested information about the status of the account.

Overt Act No. 26: On December 2, 2022, defendants WONG, ZHANG, WALKER, and ZHU received a wire transfer of $10,000 from Victim F.B. to the 9529 BoA Account.

Overt Act No. 27: On December 2, 2022, defendants WALKER, ZHANG, and WONG exchanged messages discussing the status of bank accounts used for laundering fraud proceeds, including but not limited to the Sea Dragon shell entities' bank accounts, and the need to "call every week to confirm on the status[.]"

Overt Act No. 28: On December 2, 2022, defendants WALKER, ZHANG, and WONG exchanged messages about the 9529 BoA Account with directions to wire $60,000 from the 9529 BoA Account to the MUFJ Account with wire instructions directing that the money ultimately be transmitted to a bank account with Deltec Bank.

Overt Act No. 29: On December 2, 2022, defendants WONG, WALKER, and ZHANG executed a wire transfer of $60,000 from the 9529 BoA Account to the MUFJ Account with wire instructions directing that the money ultimately be transmitted to a bank account with Deltec Bank.

Overt Act No. 30: On December 5, 2022, defendants ZHANG, WONG, and WALKER exchanged messages about accessing funds in the Sea Dragon bank accounts, including photographs of bank statements related to the accounts.

Overt Act No. 31: On December 6, 2022, defendant WALKER sent defendants ZHANG and WONG a message stating, "[defendant ZHU's] Bank of America corporate account will receive a check on the week after December 18th," and sent a photograph of banking credentials and an ATM PIN number.

<u>Overt Act No. 32:</u> On December 6, 2022, defendant ZHU executed a wire transfer of $37,400 from the 9529 BoA Account to the MUFJ Account with wire instructions directing that the money ultimately be transmitted to a bank account with Deltec Bank.

<u>Overt Act No. 33:</u> On December 8, 2022, defendant ZHANG sent to defendants WONG and WALKER messages indicating that "there will be four more clients in the second half of the year" to manage.

<u>Overt Act No. 34:</u> On December 9, 2022, defendants ZHU and WONG visited a BoA branch in Arcadia, California and withdrew $19,000 from the 9529 BoA Account.

<u>Overt Act No. 35:</u> On December 9, 2022, defendant WONG sent a message to defendants ZHANG and WALKER on a chat application stating, "Everyone received 75,000 received in personal accounts."

<u>Overt Act No. 36:</u> On December 9, 2022, defendant ZHU received a wire transfer of $75,000 into his personal BoA bank account ending in 6689 from Victim R.K.

<u>Overt Act No. 37:</u> On December 10, 2022, defendant ZHANG sent a message to defendants WALKER and WONG on a chat application instructing that cash needed to be withdrawn from "[Defendant ZHU's] BoA" and then "[Defendant ZHU's] East West," and then directed that "if you can't withdraw, remit 99000 to [a third party]."

<u>Overt Act No. 38:</u> On December 12, 2022, defendant ZHU executed a wire transfer of $102,128 from his personal EWB bank account ending in 9074 to the third party specified in defendant ZHANG's December 10, 2022 message.

COUNTS TWO THROUGH FOUR

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a), (b)]

15. The Grand Jury re-alleges and incorporates paragraphs 1 through 10 of this Indictment here.

16. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants WONG, ZHANG, WALKER, and ZHU, and others known and unknown to the Grand Jury, each aiding and abetting the other, conducted and willfully caused to be conducted the financial transactions described below affecting interstate and foreign commerce, knowing that the property involved represented the proceeds of some form of unlawful activity, and which transactions, in fact, involved the proceeds of specified unlawful activity, namely, wire fraud, committed in violation of Title 18, United States Code, Section 1343, and knowing that each of the transactions was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds:

| COUNT | DATE | MONETARY TRANSACTION | DEFENDANTS |
|---|---|---|---|
| TWO | November 3, 2022 | Bank wire transfer of $50,000 from a JPMorgan Chase account ending in 5581 to a bank account at Mitsubishi UFJ Trust and Banking in New York. | ZHU and WONG |
| THREE | December 2, 2022 | Bank wire transfer of $60,000 from a Bank of America account ending in 9529 to a bank account at Mitsubishi UFJ Trust and Banking in New York. | ALL DEFENDANTS |

| | | | |
|---|---|---|---|
| FOUR | December 6, 2022 | Bank wire transfer of $37,400 from a Bank of America account ending in 9529 to a bank account at Mitsubishi UFJ Trust and Banking in New York. | ALL DEFENDANTS |

COUNTS FIVE THROUGH SEVEN

[18 U.S.C. §§ 1956(a)(2)(B)(i), 2(a), (b)]

17. The Grand Jury re-alleges and incorporates paragraphs 1 through 10 of this Indictment here.

18. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants WONG, ZHANG, WALKER, and ZHU, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly transported, transmitted, transferred, and willfully caused to be transported, transmitted, and transferred, the monetary instruments and funds listed below from a place in the United States to and through a place outside the United States, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which monetary instruments and funds, in fact, were derived from specified unlawful activity, that is, wire fraud, committed in violation of Title 18, United States Code, Section 1343, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds:

| COUNT | DATE | WIRE TRANSFER | DEFENDANTS |
|---|---|---|---|
| FIVE | October 25, 2022 | Bank wire transfer of $152,000 from a JPMorgan Chase account ending in 3886 to a China Construction Bank account in Hong Kong. | ZHU and WONG |
| SIX | October 31, 2022 | Bank wire transfer of $108,000 from a Bank of America account ending in 9529 to a China Construction | ALL DEFENDANTS |

| | | | |
|---|---|---|---|
| | | Bank account in Hong Kong. | |
| SEVEN | November 3, 2022 | Bank wire transfer of $94,000 from a Bank of America account ending in 9529 to a China Construction Bank account in Hong Kong. | ALL DEFENDANTS |

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offenses set forth in any of the counts set forth in this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/

Foreperson

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division

KHALDOUN SHOBAKI
Assistant United States Attorney
Chief, Cyber & Intellectual Property Crimes Section

LAUREN RESTREPO
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual Property Crimes Section

MAXWELL COLL
Assistant United States Attorney
National Cryptocurrency Enforcement Team
Computer Crime & Intellectual Property Section

NISHA CHANDRAN
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section

STEFANIE SCHWARTZ
Trial Attorney
National Cryptocurrency Enforcement Team
Computer Crime & Intellectual Property Section