BILAL A. ESSAYLI
United States Attorney
DAVID T. RYAN
Chief, National Security Division
MAXWELL COLL (Cal Bar No. 312651)
ALEXANDER S. GORIN (Cal. Bar No. 326235)
Assistant United States Attorneys
Cyber and Intellectual Property Crimes Section
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Major Frauds Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-1785/2429
    Facsimile:  (213) 894-0141
    E-mail:    maxwell.coll@usdoj.gov
           nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>LU ZHANG, et al.,<br><br>       Defendants. | No. CR 2:23-00596-RGK-1<br><br><u>GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT LU ZHANG</u> |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Maxwell Coll and Nisha Chandran, and Alexander Gorin, hereby files its sentencing position for defendant LU ZHANG.

     This sentencing position is based upon the attached memorandum

of points and authorities, the declaration of Assistant United States Attorney Nisha Chandran, the declaration of Special Agent George Jasek, the files and records in this case, the United States Probation and Pretrial Services Office's presentence investigation report, and such further evidence and argument as the Court may permit.

Dated: May 5, 2025                    Respectfully submitted,

                                      BILAL A. ESSAYLI
                                      United States Attorney

                                      DAVID T. RYAN
                                      Assistant United States Attorney
                                      Chief, National Security Division


                                         /s/ Nisha Chandran
                                      MAXWELL COLL
                                      NISHA CHANDRAN
                                      ALEXANDER S. GORIN
                                      Assistant United States Attorneys

                                      STEFANIE SCHWARTZ
                                      TAMARA LIVSHIZ
                                      Trial Attorneys
                                      Criminal Division, Computer Crime
                                      and Intellectual Property Section

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant LU ZHANG conspired to conduct financial transactions in excess of $20 million involving fraudulently obtained funds from U.S. victims of cryptocurrency investment scams (also known as "pig butchering" scams. (Dkt. 64 at 7-9.)  Defendant ZHANG accepted responsibility shortly after her arrest.  On May 13, 2024, defendant ZHANG pleaded guilty pursuant to a plea agreement to one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (count one).  (Dkts. 64-66.)  The government has charged by indictment six defendants involved in the money-laundering network, five of whom have executed plea agreements and one of whom remains a fugitive.[1]  Three additional defendants involved in the scheme have also signed plea agreements.[2]  Defendant ZHANG is the second defendant to be sentenced.

In the plea agreement, defendant ZHANG agreed to a base offense level of 8; that she laundered funds between more than $1,500,000 and more than $25,000,000, such that an enhancement of between +16 and +22 must be applied; that the conviction is for a Section 1956 offense such that a +2 enhancement must be applied; and that she engaged in sophisticated money laundering such that another +2 enhancement must be applied.  (Dkt. 64 at 9.)

---

[1] All of the indicted defendants are in cases pending before this Court.  See United States v. Lu Zhang, Joseph Wong, Justin Walker, and Hailong Zhu, 2:23-CR-00596-RGK-3; United States v. Daren Li and Yicheng Zhang, 2:24-CR-393-RGK.

[2] See United States v. Shengsheng He, 2:25-CR-00175-RGK; United States v. Jose Somarriba, 2:25-CR-00181-RGK; and United States v. Jingliang Su, 2:24-MJ-07038-DUTY.

The United States Probation and Presentence Office ("USPPO") issued its Presentence Report ("PSR") on February 12, 2025.  (Dkt. 106.)  The PSR calculated a total offense level of 29, which included a base offense level of 8 plus a 20-level increase because the loss attributable to defendant ZHANG was greater than $9,500,000 but less than $25,000,000 (PSR ¶¶ 48, 52); a two-level increase because defendant ZHANG was convicted under 18 U.S.C. § 1956 (PSR ¶ 53); a two-level increase because the offense involved sophisticated laundering (PSR ¶ 55); a two-level increase because defendant ZHANG held a managerial and supervisory role in the offense (PSR ¶ 63); a three-level reduction for defendant ZHANG's acceptance of responsibility (PSR ¶¶ 67-68); and a two-level reduction for zero-point-offender status (PSR ¶ 70.)  Based on a total offense level of 29, and a Criminal History Category of I, the PSR calculated an advisory Guideline range of 87 to 108 months' incarceration.  (PSR ¶ 115.)  The PSR did not identify any factors that would warrant a departure or variance from the applicable Guidelines range.  (PSR ¶¶ 129, 130.)

The government agrees with the PSR's criminal history calculation and the offense-level calculation.  However, the government believes that a further twelve-level reduction is appropriate for the reasons stated in its contemporaneously filed motion.  In light of this, the total offense level calculation decreases to 17 and the resulting advisory Guidelines range is 24 to 30 months.  Thus, the government respectfully requests that the Court sentence defendant ZHANG to: (1) a Guidelines term of 24 months' imprisonment; (2) three years of supervised release; (3) restitution

in the amount of $7,560,014; and (4) a mandatory special assessment of $100.

## II.   OVERVIEW OF STRUCTURE OF SCAM AND MONEY LAUNDERING NETWORK

As described in Count One of the Indictment, the conspiracy involved an international network of co-conspirators who scammed U.S. victims and laundered victim money through U.S. shell companies, international bank accounts, and cryptocurrency wallets.

**International Scammers**: First, unknown co-conspirators largely residing overseas (not defendant ZHANG or any of the charged co-defendants) contacted U.S. victims directly through unsolicited social-media interactions, telephone calls and messages, and online dating services. These co-conspirators gained the trust of victims by establishing either professional, friendly, or romantic relationships with them. After gaining the victims' trust, the co-conspirators promoted fraudulent cryptocurrency investments to the victims. Co-conspirators established spoofed domains and websites that often resembled legitimate cryptocurrency trading platforms. In some executions of the scheme, co-conspirators fraudulently induced victims into investing in cryptocurrency through these fraudulent and spoofed investment platforms. In other executions of the scheme, co-conspirators fraudulently induced victims into investing in cryptocurrency by sending funds via wire transfers to U.S.-based bank accounts. Co-conspirators fraudulently represented to victims that their investments were appreciating when, in fact, those funds were stolen.

**Domestic Laundering Networks**: Second, a group of domestic money launderers received victim funds in U.S.-based bank accounts

3

established on behalf of U.S. shell companies and caused the further transfer of victim funds to domestic and international bank accounts. Defendant ZHANG fits within this category of co-conspirators, as do each of the co-defendants in this case (Joseph WONG, Justin WALKER, and Hailong ZHU). These defendants, among other co-conspirators, worked together to register shell companies with the California Secretary of State and/or open bank accounts in the names of those shell companies with U.S. financial institutions, including Bank of America ("BoA") and JPMorgan Chase ("JPMC"). The shell company accounts received bank wires from victims of the scheme throughout the United States. These individuals discussed when and how to receive and execute interstate and international wire transfers of victim funds, arranged for the transfer of the fraudulently obtained proceeds via interstate and international wire transfers, and caused wire transfers to be sent through various intermediary bank accounts before reaching their final beneficiary. Defendant ZHANG and other money movers traveled to financial institutions within the Central District of California to access funds in the bank accounts used to launder fraud proceeds, called the banks to inquire about the status of the funds, and closely monitored the bank accounts, insuring victim funds continued to flow into and out of the accounts.

**Bahamian Cryptocurrency Converters**: Third, virtually all of the victim funds flowed from U.S. bank accounts to two bank accounts at the Bahamian financial institution Deltec Bank & Trust ("Deltec Bank"), referred to in related court documents as Bahamas Account #1 and Bahamas Account #2. Defendants in the related cases (not defendant ZHANG or any of the co-defendants in the above-captioned

4

case) have been charged with setting up the Bahamian entity Axis
Digital Limited and the affiliated bank account Bahamas Account #1.
Once these defendants received the victim funds from transfers the
money movers initiated, the Bahamian cryptocurrency converters would
cause the funds to be converted from U.S. dollars to the
cryptocurrency Tether, or USDT.[3]  After the funds were converted to
USDT, the Bahamian cryptocurrency converters would cause the Bahamian
bank to transfer the USDT to a cryptocurrency wallet controlled by
individuals overseas.

**Final Distribution of Victim Funds**:     Fourth, after co-
conspirators laundered the victim funds from U.S.-based bank accounts
to the Bahamian bank accounts and converted the funds to USDT, a
network of foreign-based individuals would receive the cryptocurrency
in a virtual currency wallet.  After receiving the funds in the
virtual currency wallet, these co-conspirators would distribute the
USDT to foreign criminals running the scam centers overseas,
including in the Kingdom of Cambodia.

The figure below shows the overall flow of funds in the charged
scheme, with defendant ZHANG's role shown in red:

---

[3] Tether, or "USDT," is a type of cryptocurrency known as a
stablecoin pegged to the U.S. dollar.  Thus, one USDT always equals
one U.S. dollar.

5

### III. DEFENDANT ZHANG PARTICIPATED IN THE DOMESTIC LAUNDERING NETWORK AND MOVED FUNDS FROM U.S. SHELL COMPANIES TO DELTEC BANK

As stated in the plea agreement, beginning from at least September 2022, and continuing through at least March 21, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant ZHANG knowingly conspired with Joseph WONG, Justin WALKER, and Hailong ZHU, and others, to conduct financial transactions involving property that represented the proceeds of wire fraud, in violation of Title 18, United States Code, Section 1343.

Defendant ZHANG conspired with WONG, WALKER, and ZHU to launder funds obtained from victims through cryptocurrency scams and related frauds, as described in count one of the indictment. Defendant ZHANG knew that the property involved in the financial transactions

represented, and would represent, the proceeds of some form of unlawful activity; that the transactions were, and would be, designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds; and that defendant ZHANG and codefendants laundered at least $20 million in fraudulently obtained funds.

In furtherance of the conspiracy, defendant ZHANG managed a network of money launderers within Los Angeles County, and elsewhere. Defendant ZHANG communicated with her co-conspirators and coordinated acts in furtherance of the conspiracy through an encrypted messaging service. In order to conceal or disguise the nature, location, source, ownership, and control of the fraudulently obtained victim funds, defendant ZHANG and WONG, WALKER, and ZHU received victim funds in bank accounts established on behalf of shell companies and caused the further transfer of victim funds to domestic and international bank accounts. Defendant ZHANG and other co-conspirators also registered shell companies with the California Secretary of State, including Sea Dragon Trading and Sea Dragon Remodel and opened bank accounts in the names of various shell companies, including Sea Dragon Trading and Sea Dragon Remodel, with United States financial institutions. Defendant ZHANG and other co-conspirators arranged for the transfer of the fraudulently obtained proceeds via interstate and international wire transfers.

Defendant ZHANG made phone calls to United States financial institutions and falsely represented that she was the accountholder when, in fact, another co-conspirator was the accountholder. During these calls, defendant ZHANG and others tried to unfreeze accounts

7

that banks had restricted due to fraud concerns.  Defendant ZHANG and other co-conspirators traveled to financial institutions within the Central District of California to access funds in the bank accounts used to launder fraud proceeds.

Defendant ZHANG admits that at least $20 million in victim funds were directly deposited into bank accounts associated with defendant ZHANG and her co-conspirators, and more than $2.2 million in victim funds were directly deposited into bank accounts associated with the Sea Dragon shell entities.

**IV.  THE USPPO'S CALCULATIONS**

**A.   The Government Concurs with the USPPO's Criminal History Calculations and the Guidelines Offense Level.**

The USPPO determined that defendant ZHANG has zero criminal history points.  (PSR ¶ 76.)  Defendant ZHANG thus falls within Criminal History Category I.  (PSR ¶ 77.)  The government concurs with this calculation.

The PSR also calculated, based on the above facts, a total offense level of 29.  (PSR ¶ 71.)  The government concurs with the base offense level of 8 calculated by the PSR.  (PSR ¶ 48.)  The PSR's total offense level calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. §2S1.1(a)(2) |
| $9,500,000 < Loss Amount < $25,000,000: | +20 | U.S.S.G. § 2B1.1(b)(1)(K) |
| 1956 Conviction | +2 | U.S.S.G. § 2S1.1(b)(2)(b) |
| Sophisticated Laundering: | +2 | U.S.S.G. § 2S1.1(b)(3) |
| Leader/Organizer: | -2 | U.S.S.G. § 3B1.1(c) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)-(b) |

8

Zero Point Offender:          -2   U.S.S.G. § 4C1.1

_____

TOTAL:                  29

Based on that calculation, the USPPO recognized that a total offense level of 29 and a Criminal History Category of I yield an advisory Guidelines range of 87 to 108 months' imprisonment, and period of supervised release from one year to three years as a Class C Felony.  (PSR ¶¶ 115-118.)

**B.    The Government Concurs with the PSR's 20-Level Loss Enhancement.**

The loss amount in these cases is devastating.  Financial tracing shows that Bahamas Account #1 received more than $35 million in funds from U.S. shell companies funneling victim proceeds that were then converted to the cryptocurrency USDT and transferred to a virtual wallet controlled by co-conspirators overseas.  As detailed in the Victim Impact Statements, dozens of U.S. citizens lost substantial sums of money in the scams--in some instances, their entire life savings.  Because the victim funds were wired overseas, converted to cryptocurrency and further dispersed to dozens of unhosted virtual wallets, the government was not able to freeze, seize, or recover any of the direct victim proceeds.[4]  Due to the money-laundering network, the victims' savings and supposed "investments" are gone.

While the overall network involved more than $35 million (and indeed substantially more than that figure), the above-captioned case charged one domestic "cell" of the overall laundering network.

_____

[4] The government continues to pursue alternative ways to recover funds for victims of these cases.

9

Defendant ZHANG's money-laundering cell involved a number of U.S. shell companies that transferred more than $9,500,000 to Bahamas Account #1 and other financial institutions.  Specifically, evidence seized from digital devices and corroborated by financial records shows that this money-laundering cell conspired to launder funds from the 25 U.S. shell companies listed below:

- BFC REMODEL, LLC;
- BFC SUPPLY, LLC;
- CREATIVE HOMEGOODS, LLC;
- FUYU COMMERCE, LLC;
- GOOD LUCK TRADING, LLC;
- KAIS TEA SET SUPPLIES, LLC;
- LEADING CONSTRUCTION, LLC;
- LJS REMODELING, LLC;
- LJS SUPPLY, LLC;
- LQH SUPPLY, LLC;
- MINGXING REMODEL, LLC;
- MINGXING TRADING, LLC;
- QAG TRADING, LLC;
- SEA DRAGON REMODEL, INC;
- SUNRISE SUPPLY, LLC;
- XIEYUNZHU TRADING, INC;
- YHM SUPPLY, LLC;
- YHM TRADING, LLC;
- YZX LUXURY, LLC;
- YZX TRENDING, LLC;
- HONG'S TRADING, LLC;

- SEA DRAGON TRADING, LLC;
- SHANGHAI FOOD & GROCERIES, LLC;
- MINGXINGTRANDING, INC.; and
- QAG TRADING, INC.

Financial tracing from Bahamas Account #1 shows that U.S.-based bank accounts established in the name of the shell companies listed above sent approximately $20,083,987 to Deltec Bank. <u>See</u> Exhibit 1. The domestic money-laundering cell that defendant ZHANG was a part of founded some of the shell companies listed above and set up bank accounts at Bank of America, Wells Fargo, and JPMorgan Chase in the names of certain of these entities. In addition to setting up shell companies and bank accounts, the money-laundering cell received instructions, including from defendant ZHANG, to wire funds to or from the above-referenced shell companies. The money-laundering cell also sent encrypted messages to each other and other co-conspirators regarding bank transfers into or out of the above entities and sent business and bank records for these companies. For a majority of the companies listed above, the money-laundering cell sent videos of cell members calling banks or scrolling through affiliated account statements.

As such, the loss amount for this domestic cell exceeds $9,500,000. Indeed, pursuant to the plea agreement, defendant ZHANG agreed that at least $20,083,987 was laundered by the cell she managed.

11

**C.    The Government Concurs with the PSR's 2-Level Increase for Being a Leader or Organizer of the Domestic Cell.**

Within this domestic cell, the money launderers maintained a hierarchical structure.  Defendant ZHANG was the leader of this domestic cell.  She received directions from her bosses about when to go to a bank and effectuate a wire transfer to Bahamas Account #1 and other financial institutions.  Defendant ZHANG would then direct other co-defendants to go to the banks and make the wire transfers, and to record themselves when doing so.  Evidence seized from digital devices shows that defendant ZHANG would organize and direct co-defendants WONG and WALKER to transport and escort other money launderers, including co-defendant ZHU, to the bank to conduct financial transactions using accounts belonging to shell companies, to video record the bank account balances to share with her bosses, and how to unfreeze bank accounts that had been frozen over fraud concerns.

While defendant ZHANG was a leader of the domestic cell of money launderers charged in this case, she was one of many cell leaders within the larger scheme.  As such, the government agrees with USPPO's determination that while defendant ZHANG held a managerial and supervisory role in the money laundering transactions, she herself was managed by other higher-level individuals who received funds and directed those funds to be laundered.  Those higher-level individuals had greater decision-making authority and received more money from the transactions than defendant ZHANG.  As such, the government agrees with the USPPO's application of a two-level

increase for holding a managerial and supervisory role in the money laundering transactions.

**D.    The Government Requests a 12-Level Reduction.**

The government has filed a contemporaneous document requesting a 12-level reduction.

* * *

Accordingly, the government believes the total offense level calculation for defendant ZHANG is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. §2S1.1(a)(2) |
| $9,500,000 < Loss Amount < $25,000,000: | +20 | U.S.S.G. § 2B1.1(b)(1)(K) |
| 1956 Conviction | +2 | U.S.S.G. § 2S1.1(b)(2)(b) |
| Sophisticated Laundering: | +2 | U.S.S.G. § 2S1.1(b)(3) |
| Leader/Organizer: | -2 | U.S.S.G. § 3B1.1(c) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)-(b) |
| Zero Point Offender: | -2 | U.S.S.G. § 4C1.1 |
| Other: | -12 | Contemporaneous Filing |

_____

TOTAL:                    17

Based on a Criminal History Category of I, the advisory Guidelines range is 24 to 30 months' imprisonment.  The government's recommended sentence is at the low-end of this advisory Guidelines range.

**E.    Joint and Several Restitution Obligation**

The government submits that defendant ZHANG should be held jointly and severally liable with the below-listed convicted co-

13

participants (which list includes the defendant) in the offense conduct for the amount of restitution ordered in this judgement:

- Lu Zhang (Case No. 23-CR-596-RGK-1)
- Joseph Wong (Case No. 23-CR-596-RGK-2)
- Justin Walker (Case No. 23-CR-596-RGK-3)
- Hailong Zhu (Case No. 23-CR-596-RGK-4)
- Daren Li (Case No. 24-CR-311-RGK-1)
- Yicheng Zhang (Case No. 24-CR-311-RGK-2)
- Shengsheng He (Case No. 25-CR-00175-RGK)
- Jose Somarriba (Case No. 25-CR-00181-RGK)

The victims' recovery remains limited to the amount of their loss and the defendant's liability for restitution ceases if and when the victim receives full restitution as to the defendant, or when the victims are made whole, whichever is earlier.

The government attaches hereto as Exhibit 2 to the Declaration of Special Agent John Jasek an anonymized list of victims with their respective loss amounts.  The total restitution owed by defendant ZHANG is **$7,560,014.**  The victims listed in this document are individuals who sent funds to at least one of the 25 shell companies listed above and who self-reported their losses to the government. The amount listed is the amount the government can attribute to the shell company bank accounts based on the self-reporting documentation.  Because victims were often re-victimized and/or told to send their funds to different money-laundering networks, the loss amount for each victim may exceed the amount attributable to this domestic money-laundering cell.  The full names of the victims have been filed under seal as Exhibit 5.

14

## V.   VICTIM IMPACT STATEMENTS

The government has submitted contemporaneously with this filing a sealed document attaching victim impact statements as Exhibit 3 and Exhibit 4.

## VI.   THE GOVERNMENT RECOMMENDS 24 MONTHS' INCARCERATION

The government recommends that defendant ZHANG be sentenced to a Guidelines term of 24 months' imprisonment, a three-year period of supervised release, a $100 special assessment, and restitution of $7,560,014.  Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

### A.   Need to Afford Adequate Deterrence

Economic crimes like the charged money laundering scheme are quintessentially deterrable.  "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'"  See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White-Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)).  In fact, Congress, in drafting section 3553, confirmed that this common-sense principle was one of the driving forces for including deterrence among the goals of sentencing.  See S. Rep. No. 98-255, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259 ("To deter others from committing the offense . . . is particularly important in the area of white collar crime.").  Indeed, Congress was expressly concerned with the fact that "[m]ajor white collar criminals often are sentenced to . . . little or no imprisonment," which the offenders disregard as "a cost of doing business."  Id.  As

Judge Bea has written, "bank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision." United States v. Edwards, 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, J., concurring).

Money laundering schemes like the one involved in this case are the lifeline for international cryptocurrency investment frauds.  The funds transferred overseas and converted to cryptocurrency give criminal syndicates the means to traffic humans and run scam compounds.  Domestic money-laundering cells must be deterred from operating U.S. bank accounts and opening U.S. shell companies that are then used to funnel millions of dollars of victim proceeds overseas.  The government's recommended Guidelines sentence will provide adequate deterrence for similar crimes.

**B.  Seriousness of the Offense**

This is a case in which the Sentencing Guidelines appropriately identify the factors that make defendant's conduct so serious: the millions of dollars in loss to numerous victims throughout the United States, the level of sophistication involved in the money-laundering network, and the significance of a money-laundering conspiracy. Together, these factors speak to a sophisticated scheme that devastated the lives of many U.S. citizens.  The effectiveness of the crime also prevented the government from freezing, seizing, or recovering any of the direct victim proceeds.  The funds were dissipated across unhosted virtual wallets controlled by individuals overseas, primarily in Southeast Asia.  A below-Guidelines sentence is not appropriate in light of the seriousness of the offense.

### C. Need to Avoid Unwarranted Disparities

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants. One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges."). The government's within-Guidelines recommended sentence avoids an unwarranted disparity with similarly situated defendants. As discussed above, co-defendant Justin WALKER was previously sentenced to 30 months' imprisonment. The government's recommended sentence for defendant ZHANG evaluates her managing or supervisory role with respect to the domestic cell of money launderers, and considers the sentence of co-defendant WALKER.

### VII. CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence defendant ZHANG to 24 months' imprisonment, three years' supervised release, a $100 special assessment, and restitution of $7,560,014.

17

### DECLARATION OF GEORGE JASEK

1.    I am a Special Agent ("SA") with the United States Secret Service and have been so employed since March 2018.  I am currently assigned to the Criminal Investigative Division in Washington, District of Columbia.  I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2.    Attached hereto as **Exhibit 1** is a summary chart of shell companies tied to the domestic money laundering cell charged in this case.

3.    Attached hereto as **Exhibit 2** is a list of U.S. victims who sent funds to the shell companies identified in Exhibit 1.  The amount of the loss is based on a government analysis of self-reporting documentation and shell company records.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: May 5, 2025

_____
GEORGE JASEK

18

## DECLARATION OF AUSA NISHA CHANDRAN

I, Nisha Chandran, hereby declare and state:

1.    I am an Assistant United States Attorney with the Major Frauds Section at the U.S. Attorney's Office for the Central District of California.  I am one of the prosecutors assigned to this case.

2.    This declaration is made in support of the government's sentencing position for defendant Lu Zhang.

3.    Attached hereto as **Exhibit 3** is a true and correct copy of a compilation of relevant victim impact statements provided to the United States Attorney's Office as of the date of this filing.  The victims listed in Exhibit 3 are part of the restitution list as they sent funds to the shell companies identified in Exhibit 1.

4.    Attached hereto as **Exhibit 4** is a true and correct copy of a compilation of relevant victim impact statements provided to the United States Attorney's Office as of the date of this filing.  The victims listed in Exhibit 4 are not members of the restitution list as the funds did not pass through shell companies identified in Exhibit 1.  These victims will likely be included in restitution orders in related sentencings.

5.    Attached hereto as **Exhibit 5** is a true and correct copy of a list of U.S. victims who sent funds to the shell companies identified in Exhibit 1.  The amount of loss listed is based on a government analysis of self-reporting documentation and shell company records.  The list contains each victim's true name and includes the best-known address for each victim.

//

//

19

1     I declare under penalty of perjury under the laws of the United

2  States of America that the foregoing is true and correct.

3  DATED: May 5, 2025

4

5                                    _____

                                     NISHA CHANDRAN